

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

### NO. PD-0796-10

---

**DANIEL RAY MORRIS, Appellant**

**v.**

**THE STATE OF TEXAS**

---

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE ELEVENTH COURT OF APPEALS
### EASTLAND COUNTY

---

**PRICE, J., filed a dissenting opinion in which MEYERS and WOMACK, JJ., joined.**

### <u>DISSENTING OPINION</u>

Today the Court essentially takes judicial notice of the reliability of the principle of

"grooming" to explain the behavior of the appellant in this prosecution for indecency with

a child. It does so for the first time at the level of discretionary review. I will concede that

it may sometimes be appropriate for an appellate court to take judicial notice of an

adjudicative fact for the first time on direct appeal.[1]  But the State did not ask the court of appeals to take judicial notice of the reliability of grooming-based testimony in this case. The State waited until filing its reply brief, and after we had already granted the appellant's petition for discretionary review, to broach the possibility of judicial notice.  I question whether it is ever appropriate for a discretionary review court to take judicial notice of an adjudicative fact.  I will reserve judgment on whether the Court is ultimately correct to conclude that expert testimony about grooming is predicated upon reliable psychological or empirical principles, and whether the particular testimony in this case derived from an appropriate application of those principles.  In any event, I cannot join the Court in taking judicial notice of its reliability, thereby relieving the State, as the proponent of the evidence, of its ordinary burden to establish reliability, and hence relevance, of the testimony.

## I.

As is apparent from the Court's opinion, the appellant properly preserved objections at trial, both to Ranger Hullum's qualifications as an expert in grooming, and as to the reliability of grooming as a psychologically demonstrable phenomenon capable of being applied to the facts of a particular case by expert opinion that may be useful to a jury.[2]  The

---

[1] See TEX. R. EVID. 201(f) ("Judicial notice may be taken at any stage of the proceeding."); *Watkins v. State*, 245 S.W.3d 444, 456 (Tex. Crim. App. 2008) (under Rule 201(f), appellate court may take judicial notice for first time on appeal at its discretion).

[2] Majority opinion, at 4.

court of appeals acknowledged that the appellant challenged the reliability of testimony based upon grooming as a psychological principle under the "soft" science standard.[3] But then the court of appeals essentially conflated the appellant's two *trial* objections, concluding that Hullum's testimony was sufficiently reliable simply because he was qualified by experience to testify about grooming.[4] The court of appeals did not otherwise address the issue of the reliability of Hullum's grooming-based testimony.

In his petition for discretionary review, the appellant argued that the court of appeals erred to resolve his appellate complaint in this way. Rather than to assert, as he might have, that we should remand the cause to the court of appeals to address his true contention on appeal, the appellant asked us to proceed straight to the merits, reiterating his argument that the State failed in its burden as the proponent of Hullum's testimony to establish, by clear and convincing evidence, that grooming-based testimony is predicated upon sound psychological—or otherwise empirically demonstrable—principles. Only after we had granted the appellant's petition did the State contend, for the first time in its reply brief, that the psychological principles that underlie grooming testimony are so well ingrained (though the State cited only a handful of federal cases for this proposition, and no psychological

---

[3]

*Morris v. State*, No. 11-08-00069-CR, 2010 WL 2224651, at *9 (Tex. App.—Eastland, June 3, 2010) (not designated for publication) (citing *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000)).

[4]

*Id*. at *10.

literature or empirical data) that the prosecution should not have been expected to have to prove them at the trial court level.

After doing the vast bulk of the research for the State, the Court now essentially holds (despite the absence of any actual litigation on the subject below) that case law from other jurisdictions demonstrates that grooming is such a well-established psychological concept that the State, as proponent of the grooming-based testimony here, need not have been required to prove it at all. The Court proceeds to take this judicial notice in the absence of any request from the State at either the trial or appellate level and without alerting the appellant beforehand to allow him to marshal some argument in this Court (having not been called upon to do so in either of the lower courts, since judicial notice was not sought there) why judicial notice of the particular adjudicative fact at issue in this case may not be appropriate. I cannot bring myself to go along with this.

Construing Rule 201(f) of the Texas Rules of Evidence, we have recognized that an *appellate* court may take judicial notice of an adjudicative fact, at its discretion, even for the first time on appeal.[5] But an appellate court should do so, if at all, only when necessary to avoid an unjust judgment, and only when the fact to be judicially noticed is beyond any reasonable dispute.[6] Otherwise, judicial notice at the appellate level simply serves to relieve

---

[5] *Watkins*, *supra*.

[6] *Id*.

the party with the burden to prove the adjudicative fact of the necessity of actually proving it, without even affording his adversary the opportunity to challenge its indisputability.

In my view, judicial notice of an adjudicative fact should never be taken for the first time by a discretionary review court.[7] Unlike the courts of appeals, whose duty it is to assure (inasmuch as humanly possible) that justice is achieved in individual criminal cases, our primary purpose, in our capacity as a discretionary review court, is to shepherd the jurisprudence. We should be less concerned with the correctness of the resolution of individual cases, and more concerned that the courts of appeals have at their disposal the clearest possible articulation of the most important legal principles, so that they may better fulfill their role of doing justice in the many appeals-as-of-right that this Court will never choose, or even have the opportunity, to review. When this Court takes judicial notice of an adjudicative fact for the first time on discretionary review, we become involved as petty fact-finders, to the detriment of our proper role as ultimate arbiters of the law. Inserting ourselves in the adjudicative fact-finding function exposes us to accusations of judicial activism, even favoritism. We risk distorting the jurisprudence to fit a desired result in the particular case

---

[7] Rule 201(e) guarantees the opponent of judicial notice some opportunity to show why it is inappropriate, even if that opportunity should come only after the court has already taken judicial notice, as it is permitted by the rule to do, *sua sponte*. TEX. R. EVID. 201(e). When we take judicial notice of an adjudicated fact for the first time on discretionary review, the only opportunity the opponent has to challenge the propriety of our action is via motion for rehearing. It is highly questionable whether a *motion* for rehearing, of which we grant precious few, constitutes the "opportunity to be heard" contemplated by the rule.

rather than accepting the case in the posture that it comes to us and using it dispassionately to shape the law, hopefully for the better. I want no part of that.

This is not to say that I doubt that, at a certain point, a principle of the soft sciences may become so well accepted that a trial or appellate court could appropriately take judicial notice of the reliability of expert testimony deriving from that principle. Far from it. Once the proponents of expert testimony have satisfied their burden to establish reliability with sufficient regularity in the course of Rule 705 hearings,[8] it makes perfect sense at some point to ask the next trial court, or even an appellate court, to take judicial notice of that reliability.[9] This effectively relieves the proponent of the onus, each and every time he subsequently offers such testimony, of having to re-prove the first prong of the *Nenno* soft-science standard—whether the field of expertise is legitimate.[10] From that point on, the proponent need only prove that his expert is qualified and has appropriately utilized the reliable principle in arriving at his expert opinion. This Court may then decide, if called upon to do so in a petition for discretionary review, whether judicial notice in the lower court was appropriate—as a jurisprudential question, after comprehensive briefing from the affected

---

[8]

*See* TEX. R. EVID. 705 (providing opponent of expert testimony to conduct *voir dire* examination, outside jury's presence, to test factual basis for expert's opinion testimony).

[9]

*Hernandez v. State*, 116 S.W.3d 26, 29 (Tex. Crim. App. 2003).

[10]

*Nenno v. State*, 970 S.W.2d 549, 561 (Tex. Crim. App. 1998).

parties. I agree that this approach well serves the interest of judicial economy. But today the Court skips far too many steps.[11]

In the instant case, the State failed to demonstrate at the Rule 705 hearing *either* that the psychological principle behind its proffered grooming testimony was reliable *or* that it has been found to be reliable, after full ventilation of the issue, in a sufficient number of other cases to justify asking the trial court to take judicial notice of that adjudicative fact. Nor did the State even ask the court of appeals in this case to judicially notice reliability. Still, the Court today takes it upon itself to hold Ranger Hullum's testimony admissible, and does so without even affording the appellant an opportunity to dispute whether the psychology behind grooming-based expert testimony is so universally acknowledged that it ought properly to be deemed the subject of judicial notice. It seems to me that the appellant could muster a pretty stout argument. In taking judicial notice today, the Court does not rely upon the frequency with which trial courts have admitted such testimony after full-blown Rule 705 hearings, in Texas or anywhere else. Nor does the Court identify an abundance of psychological literature that confirms beyond cavil the abiding reliability of grooming-based

---

[11]  *See Hernandez*, *supra* ("Trial courts are not required to re-invent the scientific wheel in every trial. However, some trial court must actually examine and assess the reliability of the particular scientific wheel before other courts may ride along behind. Some court, somewhere, has to conduct an adversarial gatekeeping hearing to determine the reliability of the given scientific theory and its methodology.") There is nothing remotely adversarial in the way the Court proceeds today.

expert testimony.[12]   Instead, the Court invokes case law from other jurisdictions, much of which does not even address the question of reliability, *per se*.  It is almost as if the Court regards the sheer number of cases in which proponents have simply *offered* expert testimony with respect to grooming as inviolable empirical proof of the provenance of the psychological principle behind it.  But the world is also full of psychics, horoscopes, tarot card readers, and fortune cookies.  Ubiquity does not begin to prove reliability—much less does it prove it definitively, as is required for judicial notice.

In our per curiam opinion in *Hernandez v. State*, we observed that "appellate courts may take judicial notice of other appellate opinions concerning a specific scientific theory or methodology in evaluating a trial judge's *Daubert/Kelly* 'gatekeeping' decision[.]"[13]  But

---

12

The State has certainly failed to present us, even in its reply brief on discretionary review, with unassailable proof—or, indeed, with any proof whatsoever—of the reliability of grooming testimony. A court is *required* to take judicial notice only when asked to do so by one of the parties "and supplied with the necessary information." TEX. R. EVID. 201(d).  Here, the State has supplied nothing.  Even had the State presented such information, it would be inappropriate for this Court to consider it at this level of the proceedings.  As we observed in *Hernandez*:

> In his brief to this Court, the State Prosecuting Attorney presents a plethora of cites to scientific articles and learned treatises, as well as to some cases from other jurisdictions concerning this general area of scientific endeavor.  This is swell stuff. The trial court should have been given this material, and appellant should have been allowed an opportunity to cross-examine any witnesses who sponsored it.  The trial court hearing is the main event for *Daubert/Kelly* gatekeeping hearings; it is not a try-out on the road to an appellate scientific seminar.

116 S.W.3d at 30 (referring to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and *Kelly v. State*, 824 S.W.2d 568 (Tex. Crim. App. 1992)).

13

116 S.W.3d at 31.

in the next breath we insisted that "judicial notice on appeal cannot serve as the sole source of support for a bare trial court record concerning scientific reliability."[14] If judicial notice cannot serve this function on direct appeal, I do not see how the Court can permit it to serve that function for the first time on discretionary review on a similarly bare trial court record. Where is the legal consistency that discretionary review is meant to foster?[15] To relieving the State of its burden to demonstrate the reliability of grooming-based expert testimony, or to at least demonstrate the propriety of taking judicial notice of that adjudicative fact by showing indisputable acceptance in the psychological community, I dissent.

## II.

In her concurring opinion, Judge Cochran argues that the reliability of Hullum's expert testimony need not be evaluated under the guise of "soft science" at all because it is based, not upon scientific or quasi-scientific principles, but on his experience and training. She makes a valid point. I do not doubt that a police officer may appropriately testify from his training and experience about such matters as modus operandi. A single police officer's

---

[14] *Id*. at 31-32. In a concurring opinion in *Hernandez*, Presiding Judge Keller rejected this view. *Id*. at 34 (Keller, P.J., concurring). Writing for the Court today, she seems to adopt her own view of the matter, *sub silentio*. Has our per curiam opinion in *Hernandez* been overruled?

[15] "Appellate judges," we observed in *Hernandez*, "cannot question the witnesses, cannot be assisted by live experts or by the parties' presentation of scientific materials which they believe are reliable and up-to-date, or by factual or scientific distinctions found in cases from other jurisdictions." *Id*. at 31 n.11. We are likewise deprived of these adversarial amenities when we take judicial notice of scientific reliability for the first time on discretionary review.

many years of experience, and/or any training he may have that stems from the collective experience of other police officers over time, may well provide a sufficient empirical basis to establish the reliability of expert testimony of this kind—what Judge Cochran calls "experiential 'horse sense' expertise."[16] Even so, as Judge Cochran acknowledges, "What the witness must be able to do is explain how his experience and training qualifies him to make assessments of a certain type of behavior and precisely why, based on that experience and training, he has formed an opinion of this particular set of circumstances."[17]

The record in this case shows no such thing. The best that can be said is that Hullum had personally investigated approximately seventy-five cases involving sexual assaults on children, and that he had an unspecified amount of training with respect to the investigation of such offenses, including what he called "methodology." He was not asked, and he did not say, whether that training embraced the concept of grooming. He simply acknowledged that he had "experience" "in the investigation" of "grooming techniques," without explaining what that was. At no time did the prosecutor elicit from Hullum during the Rule 705 hearing, nor did Hullum ever volunteer, any information about exactly what it was he had learned in

---

[16] Concurring opinion, at 2.

[17] *Id*. at 7. As Judge Cochran observes, the advisory committee to the Federal Rules of Evidence emphasized that an expert who testifies from experience (and, presumably, from the collective experience of his peers) "must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Id*., at 5 n.10 (quoting advisory committee notes to 2002 amendments to FED. R. EVID. 702).

all of his training and experience to equip him to testify with respect to grooming. I cannot tell from his testimony, or from any other testimony that the State proffered at the Rule 705 hearing, what the "behavioral phenomenon" of grooming is at all,[18] much less how Hullum's experience and training have taught him to recognize it.

The prosecutor, the trial court, and Hullum himself, all seem to have taken the attitude that, because Hullum had been allowed to testify about grooming on prior occasions, his testimony must likewise be admissible here. But, as the court of appeals observed, appellate courts "must review the trial court's ruling in light of what was before the trial court at the time of its ruling."[19] The State was the proponent of Hullum's expert testimony and, as such, it was required to carry the burden of making a record to show that, from his experience and/or training, Hullum is able to say that grooming is indeed a verifiable behavioral phenomenon that he can identify and explain. I do not know whether Hullum could have said that at this Rule 705 hearing, had he been asked. But he did not, and he was not. Failing to appreciate this deficiency in the record, Judge Cochran ultimately relieves the proponent of the evidence of its burden to show reliability no less than the majority does.

FILED:     December 7, 2011
PUBLISH

---

[18]

   *Id*. at 6.

[19]

   *Morris*, *supra*, at *9 (citing *Hoyos v. State*, 982 S.W.2d 419, 422 (Tex. Crim. App. 1998)).